UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

JOHN MALDONADO, :
        Plaintiff, :
         :
    v. : No. 5:25-cv-1673
         :
CITY OF ALLENTOWN :
        Defendant. :
_____

**O P I N I O N**
Motion to Dismiss, ECF No. 8- Granted in Part, Denied in Part

**Joseph F. Leeson, Jr.**                                                                        **August 27, 2025**
**United States District Judge**

**I.    INTRODUCTION**

Plaintiff, John Maldonado, initiated this action against Defendant, the City of Allentown, alleging violations of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act ("PHRA") for race/ethnicity discrimination and retaliation. These claims arise from Maldonado's employment for the City. The City has filed a Motion to Dismiss. For the reasons that follow, the Motion to Dismiss is granted for the discrimination claims and denied for the retaliation claims.

**II.    BACKGROUND**

    **A.  Factual Allegations**

The factual allegations are as follows:

In October 2021, Maldonado was hired by the City as a Part-Time Maintenance Worker and was promoted to Maintenance Foreman on June 8, 2022. Compl. ¶¶ 20-23, ECF No. 1. Maldonado had four different managers since the beginning of his employment and alleges that

prior to January 2023, he was never disciplined. *Id*. ¶ 26. Around January 2023, Casandra Magliane[1] became the Facilities Manager and Maldonado's direct supervisor. *Id*. ¶ 27. According to Maldonado, Magliane treated the Caucasian employees more favorably. *Id*. ¶ 28. Maldonado is Puerto Rican. *Id*. ¶ 20.  Magliane allegedly assigned Maldonado's Caucasian counterparts, including Mary Tretter, Al Rongione, and William Labish, "more favorable work and criticized their work product less harshly" than Maldonado's work product. *Id*. ¶¶ 28-29. Around February 2023, William Labish informed Maldonado and three other employees that Mary Tretter had stated that "blacks and Puerto Ricans were running down Allentown," or words to that effect. *Id*. ¶ 30. Maldonado filed a complaint with Magliane about this discriminatory comment and stated that there had been multiple witnesses. *Id.* ¶ 31. Magliane allegedly "brushed off" Maldonado's complaint but communicated that she would investigate it. *Id*. ¶ 32.

Around March 7, 2023, Magliane called Maldonado into her office for a meeting with Mark Shahda, Director of Public Works. *Id*. ¶ 33. Magliane issued Maldonado a written discipline during this meeting. *Id*. ¶ 34. Magliane told Maldonado that he had made up the allegations regarding Tretter's discriminatory comment. *Id*. ¶ 35. Maldonado requested that several witnesses to the discriminatory comment, including Alberth Rivera and Nachez Minickene, come into the meeting to support his appeal of his written discipline. *Id*. ¶ 36. Shadha and Magliane agreed. *Id*. ¶ 37. During the meeting, Rivera and Minickene corroborated what Maldonado had reported. *Id*. ¶ 38. Shadha then agreed to take the situation to Human Resources for further investigation. *Id*. ¶ 39.

---

[1]     The Complaint uses two different spellings: "Magliane" and "Maglaine,"*see, e.g.* Compl. ¶¶ 27, 29, as does the opposition brief, *see, e.g.* Opp. 2, ECF No. 9-1.  The EEOC charge lists a third spelling: "Maglain."  *See* ECF No. 8-2.  Unsure of the correct spelling, this Court uses "Magliane."

A week later, Magliane informed Maldonado that Human Resources had found that there was no evidence to support his claims. *Id*. ¶ 40. Soon after, Magliane disciplined Maldonado multiple times for allegedly doing other union workers' duties for them, such as vacuuming and other cleaning tasks. *Id*. ¶ 42. Maldonado denies these allegations. *Id*. ¶ 45. Around May 4, 2023, Shadha and Magliane called Maldonado on the phone and abruptly terminated his employment and stated the reason for his termination as performance deficiencies. *Id*. ¶¶ 46-47. Magliane alleged that Maldonado continued to perform vacuum duties for other union workers even after he had been written up. *Id*. ¶ 48. Maldonado maintains that this purported reasoning was simply pretext for the City's unlawful employment practices towards Maldonado. *Id*.

### B. Procedural History

On March 31, 2025, Maldonado filed a Complaint against the City, alleging: (1) race/ethnicity discrimination in violation of Title VII; (2) race /ethnicity discrimination in violation of the PHRA; (3) retaliation in violation of Title VII; (4) retaliation in violation of the PHRA. *See* Compl. On June 2, 2025, the City filed a Moton to Dismiss for Failure to State a Claim. Mot., ECF No. 8. On June 16, 2025, Maldonado filed a Response in Opposition to the City's Motion to Dismiss.  Opp., ECF No. 9-1.  The City's Motion is ready for disposition.

### III. LEGAL STANDARDS

### A. Motion to Dismiss, Rule 12(b)(6) – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) (holding that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that "a document integral to or explicitly relied upon in the complaint may be considered" (internal quotations omitted)).  Courts may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

B. **Title VII and PHRA,[2] Discrimination – Review of Applicable Law**

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015). "The central focus in a discrimination case is "whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). Disparate treatment claims brought under Title VII are analyzed using the three-step framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Rabinowitz v. AmeriGas Partners, L.P.*, 252 F. App'x 524, 527 (3d Cir. 2007).

"Under the McDonnell Douglas paradigm, an employee must first establish a prima facie case of discrimination, after which the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision." *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005). "If the employer articulates one or more such reasons, the aggrieved employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual." *Id.* "It is important to note that although the burden of production may shift during the McDonnell Douglas inquiry, the ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee]." *Id. See also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (explaining

---

[2]   Discrimination under Title VII and the PHRA "are substantially similar, and Pennsylvania courts generally interpret the PHRA consistent with Title VII." *Nagle v. RMA*, 513 F. Supp. 2d 383, 387 (E.D. Pa. 2007) (analyzing the plaintiff's discrimination, retaliation, and constructive discharge claims under Title VII and applying the conclusions equally to the PHRA claims).

that once the plaintiff establishes a prima facie case, the law creates a "presumption" of unlawful discrimination, which is rebutted if the employer articulates a legitimate nondiscriminatory explanation for the employer's action, but the "presumption does not shift the burden of proof, and ignores our repeated admonition that the Title VII plaintiff at all times bears the ultimate burden of persuasion").

To establish a prima facie case of employment discrimination, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). The Third Circuit has "defined 'an adverse employment action' under Title VII as an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). A plaintiff's inference of discriminatory motive "could be supported in a number of ways, including, but not limited to, (1) comparator evidence, (2) evidence of similar racial discrimination of other employees, or (3) direct discrimination from statements or actions by her supervisors suggesting racial animus." *Jarmon v. Trader Joe's Co.*, 660 F. Supp. 3d 357, 363 (E.D. Pa. 2023) (quoting *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010)).

C. **Title VII and PHRA, Retaliation – Review of Applicable Law**

"To establish a prima facie case of retaliation under Title VII and the PHRA, a plaintiff must show that: '(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her

participation in the protected activity and the adverse employment action.'" *Salvato v. SEPTA*, 658 F. App'x 52, 56 (3d Cir. 2016) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)); *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006). Pursuant to the first element, a report to a superior may constitute protected activity where discrimination is specifically alleged in the verbal or written report. *LeBlanc v. Hill Sch.*, No. 14-1675, 2015 WL 144135, at *14 (E.D. Pa. Jan. 12, 2015) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)); *see also Moore*, 461 F.3d at 341 (stating that the employee must have a good faith, reasonable belief that the activity complained of is unlawful (citing *Clark Cnty v. Breeden*, 532 U.S. 268, 271 (2001))). As to the second element, a plaintiff must show that "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore*, 461 F.3d at 341 (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *McNair v. Home Depot*, No. 01-3173, 2002 U.S. Dist. LEXIS 11844, at *1-3 (E.D. Pa. Jan. 10, 2002) (holding that the failure to accommodate schedule changes which others did not receive is not materially adverse action for the purpose of a PHRA retaliation claim). Finally, a plaintiff must show a causal connection between the protected activity and the retaliatory act. *Moore,* 461 F.3d at 341-42. Absent direct evidence, a plaintiff may establish the requisite causal connection by proving "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006). A plaintiff may also support a causal connection by showing that the employer gave inconsistent testimony or inconsistent reasons for terminating the employee. *Farrell v. Planters Lifesavers Co.*, 206

F.3d 271, 280-81 (3d Cir. 2000). Because there is no single, definite way of showing causation, the court must look at the evidence "as a whole" to determine whether retaliation has been sufficiently pled. *See Jensen*, 435 F.3d at 450 (citing *Farrell*, 206 F.3d at 280-81).

## IV. ANALYSIS

### A. The discrimination claims are dismissed without prejudice.

The City's Motion to Dismiss only challenges the fourth requirement for a *prima facie* case of race/ethnicity discrimination under Title VII and the PHRA- that the action occurred under circumstances that could give rise to an inference of intentional discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. To plausibly allege this element, Maldonado must allege facts that show "some causal nexus" between his protected status and the City's adverse treatment. *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 237 (3d Cir. 2015) (quoting *Sarullo*, 352 F.3d at 798). In addition, Maldonado must allege facts showing that similarly situated employees, outside of the protected class, were treated more favorably. *See Mandel v. M & Q Packaging Corp.* 706 F.3d 157, 170 (3d. Cir. 2013).

Maldonado fails to show a causal nexus between his termination of employment and his race/ethnicity discrimination. This is because he nakedly asserts that when Magliane became his supervisor, "it became clear that [Magliane] treated [his] Caucasian counterparts more favorably." Compl. ¶ 28. Maldonado supports this claim by alleging that Magliane "assigned [his] Caucasian counterparts, including Mary Tretter, Al Rongione and William Labish, more favorable work and criticized their work product less harshly." *Id*. ¶ 29. This allegation does not meaningfully amount to a discrimination claim because "[h]e fails to plead *how* non-members of his protected class were treated more favorably. . . ." *Sims v. Univ. of Pa. Health Sys.*, No. 22-5260, 2025 U.S. Dist. LEXIS 42237, at *25 (E.D. Pa. Mar. 7, 2025) (emphasis added). "More

favorable work" and "less harshly" are conclusions, which do not suffice to show or create an inference of discrimination.  *See Iqbal*, 556 U.S. at 678 (holding that conclusory allegations do not suffice to state a claim); *Veverka v. Human Servs. Ctr.*, No. 2:22-cv-1190,, at *19 (W.D. Pa. Mar. 14, 2023) (holding that the plaintiff "must set forth some factual detail beyond bare conclusory allegations to show how other employees were treated more favorably to survive [a] Motion to Dismiss"); *Wise v. Estes*, No. 10-481 (JLL), 2010 U.S. Dist. LEXIS 66727, at *15 (D.N.J. July 1, 2010) (dismissing the discrimination claim because the plaintiff "makes only broad conclusory statements that he and other minorities were more harshly reprimanded than non-minorities").  Maldonado does not provide any factual allegations apart from these two conclusory statements to suggest that his termination was tied to discrimination.  He also does not provide comparator evidence or evidence of similar discrimination of other employees.  Additionally, the sole alleged discriminatory comment was made by Mary Tretter, who was *not* a supervisor and had no part in the decision to terminate Maldonado.  Thus, he fails to show a causal nexus.  Maldonado has not presented sufficient factual allegations to state a *prima facie* case of race/ethnicity discrimination to survive the City's Motion to Dismiss.

The discrimination claims are dismissed without prejudice and with leave to amend.  *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").

### B.  The Complaint sufficiently alleges retaliation claims.

The City argues that Maldonado fails to plausibly allege a causal connection between his complaint regarding a coworker's discriminatory comment (protected activity) and his termination (adverse action), which is required to state a *prima facie* case of retaliation.

Maldonado participated in a protected activity during February 2023 by reporting and protesting a discriminatory comment made by another employee. *See Phillips v. Donahoe*, No. 12-410, 2013 WL 5963121, at *2 (W.D. Pa. 2013) (holding that a formal complaint of discrimination is protected conducted for purposes of a retaliation claim). On or about March 7, 2023, Magliane, Maldonado's supervisor, issued him a written discipline for allegedly lying about the discriminatory comment, even though two witnesses corroborated the story. *See id.* ¶¶ 34-36. Magliane disciplined Maldonado more times after this for allegedly doing other employee's work for them. *Id.* ¶ 42. Around May 4, 2023, Maldonado was terminated purportedly for performance deficiencies. *Id.* ¶¶ 46-47.  His termination constitutes adverse action.[3]

Although the temporal proximity between Maldonado reporting a discriminatory remark made by another employee in February[4] and his termination three months later is not in itself unusually suggestive, *see LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment."), a causal nexus has been alleged through a pattern of antagonism, *see Robinson v. SEPTA*, 982 F.2d 892, 894 (3d Cir. 1993) (finding that beginning a pattern of harassment by repeatedly disciplining plaintiff for minor matters, miscalculating his points for absences from work, and generally trying to provoke plaintiff to insubordination is enough to establish a causal connection).  At the first meeting about his discrimination complaint, which was held within a month[5] of his report,

---

[3]   It is unnecessary to decide at this time whether the disciplines also rose to the level of adverse activity.
[4]   The exact date in February is not alleged.
[5]   Although the exact date of the complaint in February is not alleged, the meeting occurred on March 7, 2023.

several witnesses corroborated Maldonado's story, yet Magliane still issued a written discipline against Maldonado for filing a false report. Compl. ¶¶ 34-35 (Magliane told Maldonado that "he made up the allegations regarding Tretter's discriminatory comment."). In the following two months, Maldonado received additional multiple disciplines for performing "extra work for other employees." *Id.* ¶¶ 42-44. However, Maldonado, who was never disciplined under past supervisors, asserts that the allegations were mere pretext. *Id.* ¶ 48. Thus, Maldonado not only received a written discipline for falsely making a discrimination complaint even though other employees corroborated his story, but he also received multiple written disciplines for the first time in seventeen months of employment for doing too much work. All such disciplines were issued within weeks of his protected activity and culminated in his termination approximately three months later. This pattern of antagonism is sufficient to establish a causal link between Maldonado's protected activity and termination. *See Robinson*, 982 F.2d at 894 (holding that causation can be established through a "pattern of antagonism" such as a "constant barrage of written and verbal warnings ... and disciplinary action[s] ... soon after plaintiff's initial complaints").

The Motion to Dismiss claims of retaliation in violation of Title VII and the PHRA is denied.

**V.   CONCLUSION**

Maldonado did not plead sufficient facts to show a causal link to state a claim of discrimination in violation of Title VII and the PHRA. However, he did plead sufficient facts, when taken as true, to state a claim of retaliation in violation of Title VII and the PHRA. For all the reasons articulated above, the City's Motion to Dismiss is granted on the discrimination claims and denied on the retaliation claims.

A separate order will be issued.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge
