UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

JOHN MALDONADO,                          :
        Plaintiff,                 :
                                    :
        v.                          :          No. 5:25-cv-1673
                                    :
CITY OF ALLENTOWN                        :
        Defendant.                  :

_____

**O P I N I O N**
**Motion to Dismiss, ECF No. 13 - Granted**

**Joseph F. Leeson, Jr.**                                      **November 7, 2025**
**United States District Judge**

## I.    INTRODUCTION

Before the Court on an Amended Complaint are the claims of Plaintiff, John Maldonado, against Defendant, City of Allentown, for violations of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act ("PHRA") for race/ethnicity discrimination and for retaliation arising from Maldonado's employment for the City. The City has moved to dismiss the discrimination claims. For the following reasons, the Motion to Dismiss is granted.

## II.    BACKGROUND

### A.  Factual Allegations

In October 2021, Maldonado, a Puerto Rican male, was hired by the City as a Part-Time Maintenance Worker. Am. Compl. ¶¶ 20-21, ECF No. 12. He was promoted to Maintenance Foreman on June 8, 2022. *Id.* ¶ 23. He supervised approximately seven individuals, none of whom were Puerto Rican. *Id.* ¶¶ 26-27. Maldonado had four different managers throughout his

employment. *Id.* ¶ 29. Around January 2023, Casandra Magliane became the Facilities Manager and Maldonado's direct supervisor. *Id*. ¶ 31. Prior that, he was never disciplined. *Id*. ¶ 30.

Maldonado alleges that Magliane treated the Caucasian employees more favorably than Maldonado. *Id*. ¶ 32. Specifically, Magliane was "friendly" and would "welcome conversation" with Maldonado's Caucasian subordinates, with whom "she had an 'open door policy.'" *Id*. ¶¶ 33-34. In contrast, Magliane would "rebuff [Maldonado], direct him to engage almost exclusively in email communications with Magliane, and essentially ostracized [him] from the workplace in the form of a cold work environment." *Id*. ¶¶ 33-35. Any time Maldonado's "account of events differed from one of his Caucasian subordinates, Magliane would automatically reject [his] accounting of events and adopt the Caucasian subordinates accounting of events." *Id*. ¶¶ 36-37. Additionally, around February 2023, Maldonado attempted to write up one of his Caucasian subordinates for insubordination, but Magliane, without basis, refused to allow him to discipline the subordinate. *Id*. ¶¶ 38-41.

Around February 2023, a custodian informed Maldonado and two other employees (Alberth Rivera, half Hispanic, and Nachez Minickene, non-Hispanic) that another custodian, Mary Tretter, Caucasian, had stated that "blacks and Puerto Ricans were running down Allentown," or words to that effect. *Id*. ¶ 43. One of the other employees who had been informed approached Maldonado the following week and stated that he was planning to make a complaint to Magliane about Tretter's discriminatory remark because he did not want to work with her. *Id*. ¶ 44. Maldonado, who also believed Tretter's comment was discriminatory, responded that he would file the complaint. *Id*. ¶ 45.

Maldonado filed a complaint with Magliane about this discriminatory comment and stated that there had been multiple witnesses. *Id.* ¶ 46. Magliane allegedly "brushed off"

Maldonado's complaint but communicated that she would investigate it. *Id*. ¶ 47. Maldonado believes Magliane reached out to Tretter's husband, who was a management-level employee in a different department, about the complaint. *Id*. ¶¶ 48-49. A union representative from the other department was seen with Magliane in Magliane's office having a conversation with Tretter, after which Tretter left the office crying. *Id*. ¶ 50.

Approximately one week later, on or about March 7, 2023, Magliane called Maldonado into her office for a meeting with the Director of Public Works. *Id*. ¶ 51. Magliane issued Maldonado a written discipline during this meeting for purportedly making up the allegations about Tretter's discriminatory comment. *Id*. ¶¶ 51-52. Maldonado requested that the two employees who also heard the comment (Rivera and Minickene) come into the meeting to support the appeal of his written discipline. *Id*. ¶ 53. During the meeting, these employees corroborated what Maldonado had reported about the discriminatory comment. *Id*. ¶ 55. The Director then agreed to take the situation to Human Resources for further investigation. *Id*. ¶ 56. Approximately a week later, Magliane informed Maldonado that Human Resources had found there was no evidence to support his claims. *Id*. ¶ 57.

Thereafter, Magliane disciplined Maldonado multiple times for purportedly doing work for his subordinates, such as vacuuming and other cleaning tasks. *Id*. ¶¶ 58-60. These allegations were not true. *Id*. ¶ 61. As to one of the written disciplines Magliane "attempted to issue," Maldonado was not on shift the day he purportedly performed the work of another worker. *Id*. ¶¶ 62-63.

On or about May 4, 2023, the Director of Public Works and Magliane called Maldonado and abruptly terminated his employment for purportedly continuing to perform vacuum duties for other workers even after he had been written up. *Id*. ¶¶ 65-66. Maldonado contends that this

purported reason was pretext for discrimination.  *Id*. ¶¶ 66, 78.  Magliane issued a termination letter without any stated reason for Maldonado's termination.  *Id*. ¶ 67.

### B.  Procedural History

On March 31, 2025, Maldonado filed a Complaint against the City, alleging: (1) race /ethnicity discrimination in violation of Title VII; (2) race /ethnicity discrimination in violation of the PHRA; (3) retaliation in violation of Title VII; (4) retaliation in violation of the PHRA.  *See* Compl.  By Opinion and Order dated August 27, 2025, the City's Motion to Dismiss the retaliation claims was denied but granted as to the discrimination claims.  *See* ECF Nos. 10-11.  The discrimination claims were dismissed without prejudice because the allegations were insufficient to show a causal link to state a claim of discrimination.  *See id.*

Maldonado filed an Amended Complaint reasserting all claims.  *See* Am. Compl., ECF No. 12.  The City has again moved to dismiss the discrimination claims, *see* Mot., ECF No. 13, which Maldonado opposes, *see* Opp., ECF No. 16.

## III.    LEGAL STANDARDS

### A.  Motion to Dismiss, Rule 12(b)(6) – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) (holding that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding "a document integral to or explicitly relied upon in the complaint may be considered" (internal quotations omitted)). Courts may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**B.  Title VII and PHRA,[1] Discrimination – Review of Applicable Law**

Federal law prohibits employment discrimination based on race, color, religion, sex,

national origin, age, and disability.  *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d

Cir. 2015).  "The central focus in a discrimination case is "whether the employer is treating

'some people less favorably than others because of their race, color, religion, sex, or national

origin.'"  *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (quoting *Int'l Bhd. of

Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).  Disparate treatment claims brought

under Title VII are analyzed using the three-step framework of *McDonnell Douglas Corp. v.

Green*, 411 U.S. 792 (1973).  *See Rabinowitz v. AmeriGas Partners, L.P.*, 252 F. App'x 524, 527

(3d Cir. 2007).

"Under the McDonnell Douglas paradigm, an employee must first establish a prima facie

case of discrimination, after which the burden shifts to the employer to articulate a legitimate,

nondiscriminatory reason for its adverse employment decision."  *Fasold v. Justice*, 409 F.3d 178,

184 (3d Cir. 2005).  "If the employer articulates one or more such reasons, the aggrieved

employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find

by a preponderance of the evidence that the employer's proffered reasons are false or

pretextual."  *Id.*  "It is important to note that although the burden of production may shift during

the McDonnell Douglas inquiry, the ultimate burden of persuading the trier of fact that the

[employer] intentionally discriminated against the [employee] remains at all times with the

[employee]."  *Id. See also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (explaining

---

[1]     Discrimination under Title VII and the PHRA "are substantially similar, and
Pennsylvania courts generally interpret the PHRA consistent with Title VII."  *Nagle v. RMA*, 513
F. Supp. 2d 383, 387 (E.D. Pa. 2007) (analyzing the plaintiff's discrimination claims under Title
VII and applying the conclusions equally to the PHRA claims).

that once the plaintiff establishes a prima facie case, the law creates a "presumption" of unlawful

discrimination, which is rebutted if the employer articulates a legitimate nondiscriminatory

explanation for the employer's action, but the "presumption does not shift the burden of proof,

and ignores our repeated admonition that the Title VII plaintiff at all times bears the ultimate

burden of persuasion").

To establish a prima facie case of employment discrimination, a plaintiff must show that:

(1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he

suffered an adverse employment action; and (4) the adverse action occurred under circumstances

giving rise to an inference of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802;

*see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). The Third Circuit has

"defined 'an adverse employment action' under Title VII as an action by an employer that is

'serious and tangible enough to alter an employee's compensation, terms, conditions, or

privileges of employment.'" *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)

(quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). A plaintiff's inference of

discriminatory motive "could be supported in a number of ways, including, but not limited to, (1)

comparator evidence, (2) evidence of similar racial discrimination of other employees, or (3)

direct discrimination from statements or actions by her supervisors suggesting racial

animus." *Jarmon v. Trader Joe's Co.*, 660 F. Supp. 3d 357, 363 (E.D. Pa. 2023) (quoting *Golod

v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010)).

## IV.    ANALYSIS

In its Motion to Dismiss the discrimination claims in the Amended Complaint, the City

argues that Maldonado "failed to plausibly allege any facts to sufficiently link his race to his

termination or raise any inference of discriminatory action." *See* Mot. 9. The City asserts that

Maldonado failed to "allege facts that show 'some causal nexus' between his protected status and the City's adverse treatment" and also failed to "allege facts showing that similarly situated employees, outside of his protected class, were treated more favorably." *See id.* at 6-7. The City contends that Maldonado fails to explain *how* non-members of his protected class were treated more favorably. *See id.* at 7. The City further argues that Maldonado's purported comparators were his subordinates and are therefore not similarly situated as a matter of law. *See id.* at 7-8 (citing *Tamburello v. City of Allentown*, No. 5:20-cv-06153-JMG, 2022 U.S. Dist. LEXIS 22023, at *10 (E.D. Pa. Feb. 7, 2022) (explaining that "comparator employees must be similarly situated in all relevant respects, the determination of which takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in" (quotations omitted))).

The City also challenged the causal link element in its first Motion to Dismiss. In granting the Motion, this Court explained:

> . . . the fourth requirement for a *prima facie* case of race/ethnicity discrimination under Title VII and the PHRA [is] that the action occurred under circumstances that could give rise to an inference of intentional discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. To plausibly allege this element, Maldonado must allege facts that show "some causal nexus" between his protected status and the City's adverse treatment. *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 237 (3d Cir. 2015) (quoting *Sarullo*, 352 F.3d at 798). In addition, Maldonado must allege facts showing that similarly situated employees, outside of the protected class, were treated more favorably. *See Mandel v. M & Q Packaging Corp.* 706 F.3d 157, 170 (3d. Cir. 2013).

Opn. 8. This Court concluded that Maldonado failed to show a causal nexus because the sole alleged discriminatory comment was made by a coworker who had no part in the decision to terminate Maldonado. *See id.* 9. Also, Maldonado's conclusory allegations that his supervisor treated his Caucasian counterparts "more favorably" and "criticized their work product less harshly" were insufficient to create an inference of discrimination. *See id.* 8-9 (citing *Iqbal*, 556

U.S. at 678; *Veverka v. Human Servs. Ctr.*, No. 2:22-cv-1190, at *19 (W.D. Pa. Mar. 14, 2023) (holding that the plaintiff "must set forth some factual detail beyond bare conclusory allegations to show how other employees were treated more favorably to survive [a] Motion to Dismiss"); *Wise v. Estes*, No. 10-481 (JLL), 2010 U.S. Dist. LEXIS 66727, at *15 (D.N.J. July 1, 2010) (dismissing the discrimination claim because the plaintiff "makes only broad conclusory statements that he and other minorities were more harshly reprimanded than non-minorities"). The Opinion further explained that Maldonado failed to allege comparator evidence. *See* Opn. 9. That Opinion is incorporated herein.

For the reasons set forth in the Opinion dated August 27, 2025, the Amended Complaint fails to state a discrimination claim.[2]  The allegations in the Amended Complaint that Maldonado's supervisor was "friendly" and "welcome[d] conversation" with his Caucasian subordinates, but "rebuff[ed]" Maldonado and directed him to communicate with her in email are insufficient because Title VII is not a general civility code. *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998) (holding that "there is another requirement that prevents Title VII from expanding into a general civility code").  Moreover, because these allegations are unrelated to Maldonado's termination, they do not suggest any causal link to his termination. *See Leung v. SHK Mgmt., Inc.*, No. 98-3337, 1999 U.S. Dist. LEXIS 19417, at *34 (E.D. Pa. Dec. 21, 1999) (determining that a coworker's "less friendly" interaction with the plaintiff was "not relevant to [the plaintiff's] termination").

The allegation in the Amended Complaint that Maldonado's supervisor refused to allow him to discipline a Caucasian subordinate similarly fails to give rise to an inference of

---

[2]    This Opinion discusses only the new allegations in the Amended Complaint, but these new allegations have been considered in conjunction with the previous allegations that are included in the Amended Complaint.

discrimination.  *See Clancy-Fisher v. City of Phila.*, No. 02-3713, 2002 U.S. Dist. LEXIS 24715, at *4-5 (E.D. Pa. Dec. 6, 2002) (denying reconsideration of the order dismissing the gender discrimination claim where the "only facts alleged by plaintiff in support of her discrimination claim relate to defendants' conduct in preventing her from, and showing no support for her requests in, disciplining a subordinate employee").  Allegations in the Amended Complaint that Maldonado's supervisor "would automatically reject [his] accounting of events and adopt the Caucasian subordinates' accounting of events," also does not create an inference of discrimination.  *See Mango v. VA*, No. 1:19-CV-00708, 2021 U.S. Dist. LEXIS 238634, at *66 (M.D. Pa. Dec. 13, 2021) (determining allegations that the director believed other employees' "version of the events over [the plaintiff's] version . . . does not raise an inference of discrimination"). *See also Brown v. Phila. Hous. Auth.*, No. 96-5708, 1997 U.S. Dist. LEXIS 16640, at *3 (E.D. Pa. Oct. 17, 1997) (finding the plaintiff's allegation that the defendant "acted in a 'biased' manner in believing the account of the white officers involved in the altercation instead of himself" did not allege any intentional or purposeful discrimination).

Additionally, the Amended Complaint fails to create an inference of discrimination with comparator evidence, as this Court concluded in the Opinion dated August 27, 2025.  Although the Amended Complaint, in a conclusory statement, contends that Magliane treated the Caucasian employees more favorably than Maldonado, it refers only to different treatment of Maldonado's subordinates, who are not valid comparators.  *See Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011) ("[T]o be considered similarly situated, comparator employees must be similarly situated in all relevant respects[ which] takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in."); *Prince v. Trumark Fin. Credit Union*, No. 22-3097, 2022 U.S. Dist.

LEXIS 189670, at *10 (E.D. Pa. Oct. 18, 2022) (holding that subordinates of the plaintiff "cannot be a comparator . . . because they do not hold the same job as [the plaintiff]").

Finally, the Amended Complaint is devoid of any allegations of racial discrimination of other employees or of allegations that Magliane, the Director, or any other supervisor made any discriminatory statements or acted in a discriminatory manner.  *See Golod*, 403 F. App'x at 702 n.2 (holding that an inference of discrimination "could be supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting racial animus"); *Prince*, 2022 U.S. Dist. LEXIS 189670, at *9 (dismissing the discrimination claim because the plaintiff, who alleged that his employer did not allow him to train or discipline subordinates of a different race, failed to allege comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors).

The Amended Complaint therefore fails to include sufficient allegations to show that Maldonado's termination occurred under circumstances giving rise to an inference of discrimination.  Counts I and II are dismissed with prejudice.

## V.    CONCLUSION

For the reasons discussed herein, the one discriminatory comment by Maldonado's coworker, without any allegations of discriminatory statements by Maldonado's supervisor or of similar racial discrimination of other employees or of comparator evidence, does not give rise to an inference of discrimination.  The discrimination claims are dismissed with prejudice.

A separate order will be issued.

BY THE COURT:

_/s/ Joseph F. Leeson, Jr._
JOSEPH F. LEESON, JR.
United States District Judge